State of Wisconsin, Plaintiff-Respondent,
v.
Melvin E. Vance, Defendant-Appellant.
No. 03-2993-CR.
Court of Appeals of Wisconsin.
Opinion Filed: May 25, 2004.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
¶1 PER CURIAM.
Melvin Vance appeals from a judgment of conviction for two counts of burglary. He contends the trial court erred by preventing him from presenting evidence of one of the State's witness's untruthful reputation. We agree, but conclude the error was harmless. Therefore, we affirm the judgment.

BACKGROUND
¶2 The State charged Vance with two counts of burglary. Vance and Steven Squires broke into two cabins between August 7 and 9, 2001, while their girlfriends, Cynthia Nelson and Annette White, drove around waiting for them. Nelson drove her minivan, while White was a passenger.
¶3 By the time Vance's trial began, on January 2, 2003, Squires was serving a four-year prison sentence for the burglaries. Nelson had charges pending for her involvement but testified pursuant to plea agreement. White was not charged. All three testified against Vance.
¶4 Nelson testified that on the night of the burglaries, she along with Vance, Squires and White were all sitting around her house in Iron Mountain. They left in her minivan sometime late that night to look for something to do. After driving around for a while, there was talk of breaking into "camps." Nelson said they ended up on Montgomery Lake Road in Spread Eagle. She stopped near a driveway and Squires and Vance, dressed all in black, exited. Squires told her to drive around for ten to fifteen minutes and then drive back. When Nelson returned, she saw Squires and Vance standing by the roadside, carrying some items. They got into the van with the items, and then repeated the same process at another driveway. After the second break-in, Nelson drove everyone back to her house, where Squires and Vance divided up the items, including several guns. Squires testified to the same effect.
¶5 White, Vance's girlfriend at the time, testified she was a passenger in the van but did not know what Squires and Vance were going to do until it happened. She testified she thought they were just going for a ride. Because the incident occurred "quite sometime ago," she did not recall Squires and Vance dressed all in black and only remembered stopping once to let them out. She testified she never got out of the van or told anyone where to go. White further testified that some time after the burglaries, Vance left for Detroit.
¶6 The defense attempted to present three witnesses to testify to White's character for untruthfulness: Kathy Hazelwood (from Aurora), and Kathleen Gustafson and Collene Juvenville (both from Iron Mountain). In Vance's offer of proof, all witnesses indicated they had known White for a number of years, were aware of her reputation for truthfulness, and indicated in varying terms that it was bad. The trial court refused to allow the witnesses to testify to White's reputation because the court concluded the witnesses could not speak for their entire communities of Aurora or Iron Mountain.
¶7 Because of this ruling, Vance called only one witness, Juvenville, to testify. She indicated Vance left for Detroit "not too long after" July 21 or "right after his birthday" on July 30, but "sometime in August" or during "the first part of August." The jury convicted Vance on both counts. This appeal follows.

DISCUSSION
¶8 Vance argues the trial court erred by refusing to allow him to call the three witnesses to testify to White's character for untruthfulness. We agree.
¶9 A trial court's decision to admit or exclude evidence is discretionary and we will not overturn it absent an erroneous exercise of discretion. State v. Jenkins, 168 Wis. 2d 175, 186, 483 N.W.2d 262 (Ct. App. 1992). A court properly exercises its discretion when it employs "a process of reasoning which depends on facts that are in the record or are reasonably derived by inference from the record, and yields a conclusion based on logic and founded on proper legal standards." State v. Hines, 173 Wis. 2d 850, 858, 496 N.W.2d 720 (Ct. App. 1993) (citation omitted).
¶10 The trial court's conclusion that none of the witnesses could testify as to White's reputation for untruthfulness under WIS. STAT. § 906.08(1)[1] is based on an error of law. As even the State now concedes on appeal, § 906.08(1) does not require the character witness to "speak for" an entire community's population as foundation. Instead, a character witness offering reputation evidence need only purport to "describe the subject's reputation for truthfulness in the community." 7 DANIEL D. BLINKA, WISCONSIN PRACTICE: EVIDENCE, § 608.1, at 394 (2d ed. 2001). As the Judicial Council Committee's Note accompanying § 906.08 indicates, "community" is not necessarily "a geographical unit," but could be "composed of those relationships with others which arise where [one] works, worships, shops, relaxes, and lives." Judicial Council Committee's Note1974, WIS. STAT. ANN. § 906.08 (West Supp. 2000).
¶11 Thus, WIS. STAT. § 906.08(1) does not require foundation to the effect that Hazelwood, for example, is speaking for the entire Aurora community when testifying to White's reputation for untruthfulness. The same holds true for Gustafson and Juvenville regarding their community of Iron Mountain. Because the trial court's conclusion is based on an error of law, it erroneously exercised its discretion. While we may uphold a trial court's discretionary decision if the record supports the court's evidentiary ruling even if it gave the wrong reason, see Jenkins, 168 Wis. 2d at 186, we decline to search the record to construct a theory on which to affirm the trial court's ruling because we conclude any error was harmless.
¶12 Error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." State v. Harvey, 2002 WI 93, ¶49, 254 Wis. 2d 442, 647 N.W.2d 189. The test for harmless error is not whether there is evidence in the record that could support a conviction. State v. Gary M.B., 2004 WI 33, ¶72, 676 N.W.2d 475 (Abrahamson, C.J., dissenting).
¶13 Vance argues the exclusion of these witnesses' testimony as to White's reputation for untruthfulness was not harmless for three reasons: (1) as opposed to Squires and Nelson, White was the only witness who did not have a clear credibility problem; (2) other evidence established Vance was in Detroit at the time the burglaries were committed; and (3) the State's entire case rested on its witnesses' credibility. Considering each reason in view of the entire proceeding, we are not persuaded.[2]
¶14 Contrary to Vance's first reason, White did have credibility problems. She admitted having two prior misdemeanor convictions. "`Wisconsin law  embodies the idea that persons who have been convicted of crimes are as a class less worthy of belief than those who have no criminal record.'" Gary M.B., 2004 WI 33, ¶23 (quoting 7 BLINKA, § 609.1, at 417-18). Additionally, in closing arguments, Vance argued White was not credible because of her criminal record and because she was the only witness who was not charged in connection with the burglaries. Simply, White was not, as Vance initially would have us believe, an unassailable witness.
¶15 In his reply brief, Vance concedes as much, but claims the jury did not hear any reason to believe White was dishonest. Because Squires had reasons to curry favor with the State (given that he had already been convicted for the burglaries and was serving his sentence) and because Nelson had reasons to lie (since she had just made a deal with the State for her testimony), Vance argues only White did not have a direct reason to lie, making her reputation for untruthfulness all the more important.
¶16 Contrary to Vance's assertion, our review of the record does not indicate Vance was impeached based on any potential gain that he could obtain for testifying on behalf of the State. In any event, if the jury had no reason to believe White was dishonest, and consequently believed everything she said, Vance cannot explain why he was not convicted on only one of the burglary counts. As noted above, while White testified Nelson stopped only once to let Squires and Vance out of the van, Nelson testified she stopped twice and Squires confirmed they burglarized two cabins on two separate stops. The jury convicted Vance on both counts. The jury's verdict cannot be reconciled on White's testimony. Even though, as Vance claims, Squires' and Nelson's testimony was less credible, the jury nonetheless believed it. Thus, while the trial court did not allow Vance to adequately explore White's credibility, we fail to see how further attacking White's credibility would have affected the outcome of the proceeding.
¶17 Vance's second reason, the alibi argument, is peculiar. White testified Vance spent about a month in Detroit during August and September 2001, but stated he left after the burglaries. As Vance asserts in his reply brief, "The jury knew from the testimony of White that Vance did in fact go to Detroit." Thus, he argues, "The jury could have believed Vance did not commit these offenses had they reason to disbelieve the state's only supposed witness who did not possess a clear motive to lie or curry favor with the prosecution." Therefore, Vance claims White established he was in Detroit, but now he wants to further diminish White's credibility. Vance cannot have it both ways.
¶18 Setting aside this peculiarity, Vance's trip to Detroit was loosely corroborated by Juvenville, who ambiguously testified that "not too long after" July 21 or "right after his birthday" on July 30, but "sometime in August" or during "the first part of August," Vance went to Detroit to visit his cousin for four to six weeks. Juvenville could not give a more exact date for Vance's trip and conceded Vance may have been in town when the burglaries occurred.
¶19 The timing of Vance's trip was critical. The burglaries occurred sometime between August 7 and 9, 2001. Although White testified that Vance left after the burglaries, it cannot seriously be argued that Juvenville's vacillating testimonythe other evidence Vance claims established he was in Detroit at the time the burglaries were committedproved Vance was in fact in Detroit at the time of the burglaries. Thus, it is unreasonable to conclude his inability to further impeach White would have bolstered Vance's supposedly clear alibi when his alibi witness did not even know when he was in Detroit.
¶20 Finally, Vance's third reasonthat the error was not harmless because the State's entire case rested on the credibility of its witnesses, particularly White'sis also unavailing. Without rehashing the rationale above, we fail to see how a rational jury would not have convicted Vance even if White's credibility was further impeached. Therefore, the error was harmless.
By the Court.  Judgment affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] While Vance claims the error was not harmless, we note that he does not carry the burden of proving this. Instead, the State has the burden of proving that the court's erroneous ruling precluding the evidence that should have been admitted was not harmless. See State v. Sullivan, 216 Wis. 2d 768, 792, 576 N.W.2d 30 (1998).